## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

HERBERT JOHNSON,

        Plaintiff,

v.                                 **Case No. 6:18-cv-608-JA-LHP**

EAST COAST WAFFLES,

        Defendant.

---

### ORDER

This case is before the Court on Plaintiff's motion to exclude the opinions of Defendant's toxicology expert, Dr. Janci Lindsay, under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).[1] Having considered Plaintiff's motion, (*see* Docs. 119 & 119-1), and Defendant's response, (*see* Docs. 129, 129-1, 129-2, 129-3, 130, & 130-1), the Court finds that the motion must be denied.

### I. BACKGROUND

Plaintiff's son, Herbert Johnson III, died after getting shot in the parking lot of one of Defendant's restaurants. (*See* Doc. 7 ¶ 4; Doc. 119 at 2; Doc. 129 at 2). Plaintiff now sues Defendant under section 768.21, Florida Statutes (the Florida Wrongful Death Act). (*See* Doc. 7 ¶¶ 6, 11, 26; Doc. 119 at 1). Two of

---

[1] Defendant's motion for summary judgment and the parties' requests for oral argument thereon are still pending before the Court. (*See* Docs. 118, 122, & 134).

Defendant's affirmative defenses are (1) that Herbert was "comparatively at fault" for his own death because he "was under the influence of . . . alcohol at the time" and (2) that he was "more than [fifty] percent at fault for his . . . own harm" because he "was under the influence . . . to the extent that [his] normal faculties were impaired and/or [he] had a blood or breath alcohol level of 0.08 percent or higher." (Doc. 113 at 4–5 ¶¶ 5–6; *see* Doc. 119 at 1–2; Doc. 129 at 2, 5). To support these defenses, Defendant retained Dr. Lindsay to opine about how the alcohol in Herbert's system affected him during the incident that ended in his death. (*See* Doc. 119 at 3; Doc. 129 at 5–6). Plaintiff now moves to exclude those opinions. (*See* Docs. 119 & 119-1).

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert opinions and "compels" the Court "to perform [a] critical 'gatekeeping' function." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Daubert*, 509 U.S. at 589 n.7, 597); *see* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to

the facts of the case."). To decide the admissibility of an expert's opinions, the Court "engage[s] in a rigorous three-part inquiry" and considers (1) whether the expert is qualified to provide the opinions, (2) whether "the methodology by which the expert reache[d the opinions] is sufficiently reliable," and (3) whether in providing the opinions, the expert will help the factfinder "understand the evidence or . . . determine a fact in issue." *Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). "The party offering the expert has the burden of" establishing the expert's qualifications, the methodology's reliability, and the opinions' helpfulness to the factfinder "by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

## III.  DISCUSSION

In his motion to exclude, Plaintiff challenges all three parts of the Rule 702 inquiry—qualifications, helpfulness to the jury, and reliability—focusing mainly on reliability. (*See* Doc. 119). But Defendant has met its burden of establishing all three parts by a preponderance of the evidence. (*See* Doc. 129).

### A.    Qualifications

Plaintiff conclusorily claims that "Dr. Lindsay does not have the knowledge to form an opinion regarding the role, if any, alcohol played" in Herbert's death. (Doc. 119 at 3). However, to the extent that Plaintiff challenges Dr. Lindsay's qualifications as a toxicologist, Defendant has established that

her years of experience, training, and education qualify her to provide her opinions in this case. *See Waters v. AIG Claims, Inc.*, 608 F. Supp. 3d 1120, 1132 (M.D. Ala. 2022) (noting that "all of the experts [in the case, including Dr. Lindsay,] ha[d] extensive education, training, and knowledge in toxicology, ha[d] worked as toxicologists, and ha[d] taught courses in toxicology").[2]

## B.    Helpfulness to the Jury

Plaintiff also makes the unsupported assertion that Dr. Lindsay's opinions are "more likely to confuse or mislead" than to help the jury. (Doc. 119 at 3). But Dr. Lindsay's opinions may assist the jury in determining whether the comparative-fault affirmative defenses apply, as well as related issues. *See, e.g.*, Fla. Stat. § 768.36(2) ("In any civil action, a plaintiff may not recover any damages for loss or injury to his or her person or property if the trier of fact finds

---

[2] Plaintiff also cites one case from a state intermediate appellate court to support the proposition that "Florida cases have held that opinion testimony on items like habitual addiction or 'human factors' are beyond the 'experience and qualifications' of a toxicologist." (*See* Doc. 119 at 4 (citing *Hayes Robertson Grp., Inc. v. Cherry*, 260 So. 3d 1126, 1129 (Fla. 3d DCA 2018))). Even if the Court ignores any differences between the federal and state standards on the admissibility of expert opinions and allows that one case from a state intermediate appellate court could indicate what "Florida cases have held," (*id.*), the cited case did not hold what Plaintiff says it did. *See Hayes*, 260 So. 3d 1126. *Hayes* held that "[t]he trial court did not abuse its discretion in excluding [an expert's] proffered testimony" when the expert opined that the defendant's employee was an alcoholic even though the expert lacked "the medical expertise required to express a qualified diagnostic opinion on that issue." *Id.* at 1128–29, 1132. *Hayes* did not say that opining on an individual's habitual addiction to alcohol is always beyond the qualifications of a toxicologist. *See id. passim.* And even if it did, Dr. Lindsay is not testifying that Herbert was an alcoholic; rather, she is testifying to the level of alcohol in Herbert's system around the time of his death and to the effects of the alcohol on his "cognition and behaviors." (Doc. 129 at 6). *Hayes* is thus readily distinguishable. (*See id.*).

4

that, at the time the plaintiff was injured: (a) The plaintiff was under the influence of any alcoholic beverage or drug to the extent that the plaintiff's normal faculties were impaired or the plaintiff had a blood or breath alcohol level of 0.08 percent or higher; and (b) As a result of the influence of such alcoholic beverage or drug the plaintiff was more than [fifty] percent at fault for his or her own harm."); *Griffis v. Wheeler*, 18 So. 3d 2, 5 (Fla. 1st DCA 2009) (finding section 768.36(2), Florida Statutes, applicable to suits brought under the Florida Wrongful Death Act).

## C.   Reliability

Plaintiff primarily challenges Dr. Lindsay's opinions on reliability grounds. (*See* Doc. 119 at 3–4). Plaintiff criticizes the bases of some of her opinions and points to supposed contradictions involving others. (*See id.* at 5–6). Under Defendant's theory of Herbert's death, Herbert acted aggressively toward his shooter before he got shot, possibly hitting the man. (*See id.*). Plaintiff argues that Dr. Lindsay's opinions should be excluded because she bases them on Defendant's theory, which, Plaintiff says, is not supported by the police report. (*Id.*).[3] And Plaintiff faults Dr. Lindsay for providing the "fully

---

[3] Plaintiff is incorrect in asserting that the police report does not "mention an altercation between" Herbert and his shooter and "does not describe any aggressive behavior on [Herbert's] part." (*Id.*). According to witness statements recorded in the report, a man in the parking lot yelled at Herbert and his friends, and Herbert got out of the car they were in and yelled back. (*See* Doc. 117-8 at 8). Herbert and the man "continued to argue." (*Id.*). Then, Herbert got shot. (*Id.*). Contrary to Plaintiff's position, Herbert's yelling back at and arguing with the man could amount to "an

speculative and unsupported" opinion that "when any individual has alcohol in their system, alcohol influences *all* of th[at] person's decisions." (*Id.* at 6 (emphasis in original)). Plaintiff further contends that Dr. Lindsay contradicts herself by opining both that an individual's level of intoxication "is subjective" and that "all people are affected by alcohol in the same way." (*Id.* at 5–6). Plaintiff also asserts that although Dr. Lindsay admits that "she has not been retained as a [human-factors] expert," she opines that "human factors may have caused the alleged aggression that *could have* occurred due to alcohol." (*Id.* at 6 (emphasis in original) (internal quotation marks omitted)).

These arguments are more appropriate for trial than for a *Daubert* motion. *See Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1339 (11th Cir. 2020) ("[I]dentifying methodological flaws that 'impugn the accuracy of . . . results' without questioning the 'general scientific validity of . . . methods' is 'precisely the role of cross-examination' and 'go[es] to the weight, not the admissibility, of the evidence[.]'" (ellipses and second bracketed alteration in

---

altercation" and indicate "aggressive behavior on [Herbert's] part." (Doc. 119 at 5–6). Moreover, insofar as Plaintiff complains that nothing allows Dr. Lindsay to resolve the "discrepancy" as to whether Herbert hit the man before the man shot him, Dr. Lindsay has not attempted to resolve this discrepancy. (*Id.* at 5). Indeed, she testified in deposition that she did not "recall seeing" Herbert's hitting of the man "in the sheriff's documentation of what had occurred through the witness statements." (*Id.* (boldface omitted)). And when asked about Herbert's hitting of the man, she testified that if he had done it, "it just *would have* reinforced that he was displaying some aggressive behavior . . . in line with the state of intoxication that he *would've* had at the point." (*Id.* (italics added and boldface omitted)). Dr. Lindsay did not testify that Herbert did, in fact, hit the man. (*See id.*).

original) (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003))); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Plaintiff correctly identifies the factors for determining a methodology's reliability. (Doc. 119 at 4). *See Quiet Tech. DC-8*, 326 F.3d at 1341 ("In ascertaining the reliability of a particular scientific expert opinion, [courts] consider, to the extent possible: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community."). But then Plaintiff disregards these factors. He does not discuss the methodology's error rate or whether the methodology has been tested, subjected to peer review and publication, or generally accepted in the scientific community. (*See* Doc. 119). In contrast, Defendant has established that Dr. Lindsay employed a reliable methodology to arrive at her opinions in this case: she looked to the medical examiner's report for the level of alcohol in Herbert's vitreal fluid, used a generally accepted toxicology table to opine about the effects of that level of alcohol on Herbert's mind and body, and, in the process, consulted other sources of information about the incident, like the police report, as well as

other peer-reviewed research materials. (*See* Doc. 129 at 3–4; Doc. 129-1 at 3–6, 8). The Court is satisfied that Dr. Lindsay's methodology was reliable.

## IV.    CONCLUSION

Accordingly, Plaintiff's motion to exclude Dr. Lindsay's expert opinions, (*see* Docs. 119 & 119-1), is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on November 2nd, 2023.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

8